**Floyd E. STROUD, Petitioner,**

v.

**Max D. WEGER et al., Supt. Allenwood Fed. Prison Camp, Respondents.**

**Civ. No. 74–424.**

United States District Court, M. D. Pennsylvania.

Aug. 13, 1974.

Floyd E. Stroud, pro se.

S. John Cottone, U. S. Atty., Michael D. McDowell, Asst. U. S. Atty., Lewisburg, Pa., for respondents.

SHERIDAN, Chief Judge.

Floyd E. Stroud, a prisoner presently incarcerated at the Allenwood Federal Prison Camp, filed, in forma pauperis, a petition for a writ of habeas corpus in which he alleges that the United States Board of Parole has denied him his release on parole unlawfully. A rule to show cause why the relief requested should not be granted was issued, and a response was filed. Thereafter petitioner filed a "Statement of Facts." Pursuant to the court's order, respondent then filed a response directed to the factual averments set forth in the "Statement of Facts." Since it is apparent from the pleadings that there is no material issue of fact but only issues of law to be decided, the court can resolve the case without a hearing, as provided in 28 U.S.C.A. § 2243.

The undisputed facts are as follows. Petitioner was convicted for violation of 21 U.S.C.A. § 841 and on June 4, 1973, was sentenced to a three year prison term. He was sentenced pursuant to 18 U.S.C.A. § 4208(a)(2) which provides that the court may specify that the prisoner may become eligible for parole at such time as the Parole Board may determine. A prisoner not sentenced under Section 4208(a) will have to serve one-third of his sentence before becoming eligible for release on parole, pursuant to 18 U.S.C.A. § 4202. On October 15, 1973, while imprisoned at the Federal Correctional Institution, Sandstone, Minnesota, petitioner received a parole hearing before the United States Parole Board. On November 15, 1973, the Parole Board informed petitioner he had been denied parole and continued to expiration of his sentence. On February 22, 1974, petitioner was transferred to the Allenwood Federal Prison in Montgomery, Pennsylvania.

The issue before the court is whether the Parole Board's decision to deny petitioner release on parole and to continue him to expiration of his sentence violates in any manner the provisions of 18 U.S.C.A. § 4208(a)(2).

It should be noted that 18 U. S.C.A. § 4208(a)(2) is used by the sentencing court to determine when a prisoner can be considered for release on parole, and does not affect the Board's discretion in determining whether parole should be granted. Thus, petitioner's assertion that he is entitled to release on parole before or, at the latest, by the time he has served one-third of his sentence is without merit. Nor does a sentence under 18 U.S.C.A. § 4208(a)(2) require the Parole Board to release an inmate upon suitable institutional adjustment. Section 4208(a)(2) merely eliminates the requirement of 18 U.S.C. A. § 4202 that a prisoner serve one-third of his sentence before becoming eligible for parole consideration. Section 4208 (a)(2) does not annul or modify the statutory requirements with respect to suitability for parole release embodied in 18 U.S.C.A. § 4203 and the Board's paroling guidelines promulgated thereunder, 39 Fed.Reg. § 2.20 (1974). Thus, a prisoner sentenced under Section 4208 (a)(2) is subject to the same substantive parole release standards as all other inmates.

A prisoner sentenced under Section 4208(a)(2), who is eligible for parole at any time, cannot receive less effective parole consideration than a non-(a)(2) prisoner, who is eligible for parole only after serving one-third of his sentence. Grasso v. Norton, D.Conn. 1974, 371 F.Supp. 171. The Board's parole decision-making guidelines, 39 Fed. Reg. § 2.20 (1974), which indicate the customary range of time to be served before release on parole for various combinations of offenses and offender (parole prognosis) characteristics, provide that exceptionally good institutional program achievement is an appropriate basis for reaching a decision to grant parole earlier than the time indicated by the guidelines. Petitioner was given his initial parole hearing four months after his incarceration, at which time he was continued to expiration of his sentence. He has now served about fourteen months. The difference between the time petitioner was given a parole hearing and the present time is approximately ten months, a time during which he will have established a record with respect to institutional performance and prison conduct. Since the regulations provide that prison performance is a factor to be considered in determining whether deviation from the Board's guidelines is warranted and whether an inmate should be given an early parole, 39 Fed.Reg. § 2.20(c) (1974), an (a)(2) prisoner who is not considered for parole after having served one-third of his sentence, as non-(a)(2) prisoners are, is denied equal treatment, having lost any chance to secure early release on the basis of his institutional record. The (a)(2) prisoner at this point is worse off than the non-(a)(2) prisoner. Such a result violates Section 4208(a) (2), the purpose of which was to eliminate disparities in length of sentences and secure equal treatment for prisoners similarly situated. 1958 U.S.Code Congressional and Administrative News, pp. 3891, 3893. As stated by the court in Grasso v. Norton, 371 F.Supp. at 173–174:

"Section 4208(a)(2) was enacted to give sentencing judges the opportunity to make federal prisoners eligible for release at any appropriate time, without having to serve the one-third of their sentences that would otherwise be required for parole eligibility. 18 U.S.C. § 4202. The author of the provision, Congressman Emanuel Celler, emphasized that prison performance was to be a key factor in determining whether an inmate sentenced under the (a)(2) provisions actually secured early release. . . .

"Sentencing judges using the provisions of § 4208(a)(2) have done so in the expectation that the Board will consider prison performance in deciding whether to grant early parole. Judge Weinfeld recently observed, in deciding to sentence pursuant to § 4208(a)(2), 'The Parole Board . . . determines, based on all significant factors, whether the defendant's re-

sponse to the institutional program has been such that release on parole' is warranted. United States v. Zacharias, 365 F.Supp. 256, 257 (S.D. N.Y.1973). . . .

"An (a)(2) prisoner normally receives his initial consideration for parole shortly after completion of the prison classification study. As in petitioner's case this occurred less than three months after his incarceration. Obviously, three months is a very brief time to determine whether a prisoner's behavior in prison is sufficiently commendable to warrant the early parole that § 4208(a)(2) authorizes. More precisely, it is a very brief time to determine whether prison performance has been so commendable as to justify a decision to release on parole at a time earlier than the Board's guidelines would specify. By considering petitioner for parole after less than three months in prison and then continuing him until the expiration of a three-year sentence (his mandatory release date is May 16, 1975), the Board precluded from parole decision-making in his case his prison performance over a length of time sufficient to satisfy the purposes of § 4208(a)(2). In other words, an adverse decision was made before the petitioner had served long enough to demonstrate to the Board by his prison conduct that he may have been entitled to a favorable decision.

"The unlawfulness of what has occurred becomes readily apparent when petitioner's situation is compared to what he would have faced had he not been given the benefit of § 4208(a)(2). Under § 4202, he would have become eligible for parole after serving twelve months of his three-year sentence. After twelve months, he would have an opportunity to demonstrate the 'exceptionally good institutional program achievement' that the Board has recognized might justify release even earlier than the time indicated by the guidelines. Of course it is commendable that the Board carried out the intent of § 4208(a)(2) by considering petitioner for parole after less than three months' incarceration, very likely the earliest time that classification material was available. But the decision to continue him to expiration of his three-year sentence frustrates the purpose of § 4208(a)(2) because petitioner now has lost the chance to demonstrate that his performance in prison over some substantial length of time justifies parole. He is thus now worse off than if he had not received the benefit of § 4208(a)(2). That situation is not merely ironical; it is illegal."

■ This court holds that a prisoner with a sentence under 18 U.S.C.A. § 4208(a)(2) who receives a continuance to a date past one-third of his maximum sentence at an initial hearing is entitled to receive a review by an examiner panel on the record, including a *current* institutional progress report.

■ Section 2.14(b) of the Parole Board's regulations, 39 Fed.Reg. § 2.-14(b) (1974), which became effective in the eastern region, which includes the state of Pennsylvania, on June 5, 1974, provides for the record review that the court here holds is *statutorily* required. The government claims in the instant case that petitioner is not entitled to the benefit of § 2.14(b) because the regulation is to be applied prospectively only and hence only prisoners who reach the one-third point in their sentences after the regulation was promulgated are entitled to the record review provided for therein. Regardless of whether § 2.-14(b) is to be applied retroactively, the holding in the instant case that an (a)(2) prisoner upon completion of one-third of his sentence is entitled to receive a parole review by an examiner panel on the record, which includes a current institutional progress report, is to be applied retroactively. In short, the requirement of a record review for (a)(2) prisoners is *not* limited to those who reach the one-third point of their sentences after this decision. A record

review is required with respect to all (a)(2) prisoners who presently have served one-third *or more* of their sentences. *See* Grasso v. Norton, D.Conn. 1974, 376 F.Supp. 116.·

In Grasso v. Norton, D.Conn.1974, 371 F.Supp. 171 (*Grasso* I), the court ruled that an (a)(2) prisoner could not receive less effective parole consideration than a non-(a)(2) prisoner. In a second *Grasso* case, Grasso v. Norton, D.Conn.1974, 376 F.Supp. 116, the court held that Section 4208(a)(2) requires that (a)(2) prisoners be given an in-person parole hearing of the same kind given the non-(a)(2) prisoner who is receiving his initial parole consideration. This court, which agrees that an (a)(2) prisoner cannot be given less effective parole consideration than a non-(a)(2) prisoner, nevertheless does not believe that at the one-third point the (a)(2) prisoner, who has already had an initial in-person parole hearing, is entitled to another in-person hearing. The new element absent from the (a)(2) prisoner's initial hearing that needs to be taken into account at the one-third point is his institutional performance and prison conduct, and this factor can be adequately reviewed by an examiner panel on the record by utilizing a current institutional progress report and by examining the inmate's prison file. An in-person hearing with respect to this factor would be of little benefit, and such a requirement would only increase the already heavy burden of the Parole Board. Thus, the court has concluded that an (a)(2) prisoner who receives a continuance to a date past one-third of his maximum sentence at an initial hearing should receive upon completion of one-third of his sentence a review by an examiner panel on the record, which includes the inmate's prison file and a current institutional progress report.

Accordingly, a writ will issue discharging petitioner from custody unless within forty-five days the Parole Board accords petitioner a review by an examiner panel on the record consistent with this memorandum.