**Cal Ronald deVYVER, Petitioner,**

v.

**WARDEN, U. S. PENITENTIARY, and United States Board of Parole, Respondents.**

Civ. No. 74–621.

United States District Court,
M. D. Pennsylvania.

Dec. 23, 1974.

John Rogers Carroll, Philadelphia, Pa., for petitioner.

S. John Cottone, U. S. Atty., Michael D. McDowell, Asst. U. S. Atty., Lewisburg, Pa., for respondents.

SHERIDAN, Chief Judge.

This case is presently before the court on a "motion for execution of order" filed by petitioner, an inmate at the United States Penitentiary, Lewisburg, Pennsylvania. On August 23, 1974, this court issued a memorandum with respect to relator's petition for a writ of habeas corpus and entered the following order:

"In accordance with the memorandum this day filed, it is ORDERED that a writ will issue discharging petitioner from custody unless within thirty (30) days of the date of this order the United States Board of Parole accords petitioner a parole review by an examiner panel on the record, which includes the inmate's prison file and a current institutional progress report.

"It is FURTHER ORDERED that all other relief requested by the petitioner is denied."

In his motion for execution of order, petitioner contends that the United States Parole Board has not adequately complied with the foregoing order for the following reasons: (1) his prison file was not requested by nor forwarded to the Parole Board; (2) the current institutional progress report was not properly prepared and was not a "real" progress report; (3) he was not properly advised of the results of the record review, the reasons given for denial of parole being inadequate, thereby violating both the Board's own regulations and the due process clause of the fifth amendment. Petitioner then filed a "supplement to motion for execution of order" in which he asserts that the Parole Board is subject to the Administrative Procedure Act (A.P.A.), 5 U.S.C.A. § 500 et seq., that pursuant to 5 U.S.C.A. §§ 554, 555 he is entitled to an in-person hearing whenever the Board considers his eligibility for parole and to the other procedural rights afforded by these sections, and that the Board's paroling policy guidelines, 39 Fed.Reg. § 2.20, are invalid because they were illegally promulgated by the Board in violation of 5 U.S.C.A. § 553.

Respondents filed a response to the court's rule to show cause which asserts that with respect to the adequacy of the record review petitioner had not exhausted administrative remedies and argues that the Administrative Procedure Act does not apply to the Parole Board. The court having concluded that the doctrine of exhaustion of administrative remedies is not applicable when the issue is whether the Parole Board has adequately complied with a court order, the court ordered respondents to file material directed to the merits of the issue of whether the Board had fully complied with the aforementioned court order. After respondents complied with this order, petitioner submitted a "traverse" to the material filed by respondents. While the extensive pleadings do raise some issues of fact, these factual issues are not material to the determinative questions of law to be decided and are not relevant to the resolution of the case. Hence, the court can resolve the

case without a hearing, as provided in 28 U.S.C.A. § 2243.

The court turns first to the adequacy of the Board's compliance with its order of August 23, 1974, which directed that petitioner be afforded a record review by an examiner panel. On September 12, a hearing examiner panel undertook the record review and considered documents in his parole file maintained at the Regional Office,[1] including an institutional progress report, dated August 29, 1974, which had been prepared by Augustine J. Calabro, a case manager at the Lewisburg Penitentiary. The most important element of the record review is the institutional progress report, since the principal purpose of the record review is to determine whether a prisoner has the exceptionally good institutional program achievement which might justify deviation from the Board's paroling guidelines and an earlier parole release than determined at his initial in-person hearing. 39 Fed.Reg. § 2.20(c) (1974); Stroud v. Weger, M.D.Pa.1974, 380 F.Supp. 897.

■ The institutional progress report was prepared in accordance with Bureau of Prisons Policy Statement No. 7200.-12[2] with the exception that Section 7 of the Policy Statement—"Evaluation of Release Readiness"—was not complied with and that information was not provided the Board. Section 7 was not prepared because it requires an offender's Treatment Team consisting of his regularly assigned case manager, correctional counselor and case management coordinator to carefully consider the offender's response to his institutional experience and then make an evaluation of his ability to remain in the community without additional violations of the law, and petitioner's regular case manager, L. A. Crutchfield, was on annual leave and therefore unavailable to participate in the preparation of an evaluation of the release readiness of the petitioner. The institutional progress report was prepared in full compliance with all other sections of Policy Statement No. 7200.12 (i. e., in compliance with Sections 1 through 6). All relevant information in petitioner's prison file was contained in the progress report, which was prepared on the basis of the information contained in his central file and from current reports obtained from detail supervisors and quarter officers at the prison. Mr. Calabro, who prepared the institutional progress report, stated in his affidavit that the time allotted by the court's order directing the Board of Parole to accord petitioner a record review did not allow sufficient time to permit preparation of Section 7 of the progress report in the absence of the inmate's regular case manager. In addition, respondents assert that the progress report is adequate for purposes of the record review without the inclusion of Section 7, a contention which the court now rejects. Moreover, respondents should have asked for an extension of

---

1. The following documents were in petitioner's parole file: Institutional Progress Report, dated August 29, 1974; Pre-sentence Report, dated July 30, 1973; Bureau of Prisons Sentence Computation Record, prepared August 3, 1973; Report on Convicted Prisoner by United States Attorney, Form 792, dated January 9, 1974; Institutional Classification and Staff Evaluation Study, dated October 17, 1973; Psychological Report by Institutional Chief Psychologist, dated September 27, 1973; Addendum to Psychological Report of September 27, 1973, by Chief Psychologist K. G. Einig, dated February 4, 1974; Letter from Isidore Siegel, Psychotherapist, Interboro, Psychiatric Center, 487 H Forbell Street, Brooklyn, New York, dated May 28, 1974; Parole Form H-6(b) order dated May 29, 1974; Copy of letter from U. S. District Judge Albert W. Coffrin to DeVyver, dated April 2, 1974; Parole Form H-6(b) order, dated April 11, 1974; Parole Form H-6 order, dated March 1, 1974; Parole Examiner's Summary of the initial hearing, dated February 21, 1974; Guideline Evaluation Worksheet of initial hearing, dated February 21, 1974, with petitioner's salient factor score and offense severity rating and with the hearing examiner panel's conclusion that release before the guideline period was not warranted.

2. The text of Bureau of Prisons Policy Statement No. 7200.12 (dated April 5, 1972) is included in the appendix at the end of the memorandum.

time in order to fully comply with the court's order rather than utilize a progress report that was incomplete.

However, since the court did not precisely define what it meant by a record "which includes petitioner's prison file and a current institutional progress report," since this is the first case to raise the question of what constitutes an adequate progress report and since this was among the first orders requiring preparation of a progress report for a record review for a § 4208(a)(2) prisoner at Lewisburg, the court has concluded that respondents shall have thirty days to conduct a record review which utilizes a progress report that includes an evaluation of release readiness pursuant to Section 7 of Bureau of Prisons Policy Statement No. 7200.12.

■ Furthermore, the court holds that a current institutional progress report is one that *fully* complies with Bureau of Prisons Policy Statement No. 7200.12. (See Appendix for the text of this policy statement.) An adequate record review consists of a review by an examiner panel of a record containing the above-defined institutional progress report and all other materials in the inmate's parole file. Because the progress report, properly prepared, contains all the relevant information contained in an inmate's prison file, it is not necessary that the material in the prison file actually be sent to the examiner panel. In addition, the court holds that Bureau of Prisons Policy Statement NE–7200.13 [3] —which requires that the entire progress report, with the exception of the recommendation section, evaluation of community adjustment section and confidential information from other agencies be disclosed to the inmate—is applicable to the progress reports prepared for §

4208(a)(2) record reviews. In the instant case, petitioner has been provided with a copy of the progress report that was prepared,[4] and the court directs that the contents of the new progress report to be prepared be disclosed to petitioner in accordance with Policy Statement NE–7200.13.

It should be noted that petitioner claims that he has "new information" to disclose which would justify his release on parole, but that he has no way to submit this information to the Parole Board because of its inadequate procedures and haphazard handling of parole cases. This contention is without merit. The Parole Board is always receptive to new information from or about federal prisoners. 28 C.F.R. Section 2.28 provides:

"Notwithstanding the appeal procedure of § 2.25 and § 2.26, the appropriate Regional Director may on his own motion reopen a case at any time upon the receipt of new information of substantial significance and may then schedule an institutional hearing or take any other action authorized under the provisions of § 2.25. Original jurisdiction cases may be reopened under the procedure of this section on the motion of two out of three Regional Directors and may be scheduled for an institutional hearing or for review by the Regional Directors on the record."

Thus, the Board pursuant to its own regulations can receive and act on new information at any time, and an inmate need not wait for his next scheduled review hearing to submit information to the Board.

Petitioner contends that after the record review the Board did not properly advise him of the reasons for its decision

3. The text of Bureau of Prisons Policy Statement No. NE–7200.13 (dated April 8, 1974) is included in the appendix at the end of the memorandum.

4. Although it is not clear whether petitioner received a copy of the pertinent parts of the progress report at the time of the examiner panel's decision, a copy of the progress report is attached to the response filed by respondents (document No. 23, attachment A) pursuant to the court's order of November 20, 1974. Since petitioner received a copy of that pleading, to which he submitted a "traverse," there is no doubt he presently has a copy of the progress report.

and that the reason given, that no change was warranted in the Board's original decision based on the information reviewed by the examiner panel, is an inadequate reason for parole denial which violates the due process clause and the Board's own regulations with respect to giving reasons for its parole decisions, 39 Fed.Reg. § 2.13 (1974). Since the Board stated after the record review that no change of its initial parole decision with respect to petitioner was warranted, it is apparent that the Board is relying on its previously stated reasons, those given after petitioner's initial in-person hearing on February 21, 1974, for its decision to deny parole and continue petitioner's confinement to February 1975, at which time he is to receive a parole review hearing. *See* the affidavits of Stanley B. Kruger and William L. Quirk, the primary hearing examiners who reviewed petitioner's case pursuant to this court's order of August 23, 1974, and the affidavit of Joseph H. Pokinski, the administrative examiner who reviewed the decision of the two primary examiners. These reasons for denying parole and continuing petitioner to February 1975, are: (1) your release at this time would depreciate the seriousness of the offense committed and is thus incompatible with the welfare of society; (2) there does not appear to be a reasonable probability at this time that you would live and remain at liberty without violating the law because of your past serious criminal pattern; (3) you need additional institutional treatment, specifically in the area of counseling, to enhance your capacity to lead a law abiding life.

■ The court holds that any one of these reasons is sufficient to support the Parole Board's decision. The examiner panel, based on its record review, decided that petitioner's institutional program achievement had not been so exceptional as to warrant deviation from the customary time to be served before release according to the Board's paroling guide-

lines. *See* 39 Fed.Reg. § 2.20 (1974). Petitioner was convicted for a firearms violation, 18 U.S.C.A. § 922(a)(6), and on December 10, 1973, was sentenced pursuant to 18 U.S.C.A. § 4208(a)(2) to a three and one-half year prison term. Petitioner's offense is rated in the moderate category by the Parole Board, *see* Adult Guidelines for Decisionmaking, 39 Fed.Reg. § 2.20 (1974), and his salient factor (parole prognosis) score was correctly computed to be 7,[5] which is a "good" rating. *See* Guideline Evaluation Worksheet, 39 Fed.Reg. § 2.20 (1974). The paroling guidelines indicate that an inmate in the moderate offense category with a "good" salient factor score and who has exhibited good institutional adjustment and program progress, *see* 39 Fed.Reg. § 2.20(b) (1974), should customarily serve 16–20 months before release. Since the Board has continued petitioner to a point of confinement within the 16 to 20 month range, which is the customary amount of time served by all prisoners who have committed that offense and have a similar salient factor score, to deny parole for the sole reason that the inmate's release at this time would depreciate the seriousness of the offense would be proper, since this familiar reason is an acceptable shorthand way of informing a prisoner that he would not be paroled because he had not been confined for the period of time indicated by the appropriate guideline. Kohlman v. Norton, D.Conn. 1974, 380 F.Supp. 1073, 1074; Wiley v. United States Board of Parole, M.D.Pa. 1974, 380 F.Supp. 1194, 1197; Battle v. Norton, D.Conn.1973, 365 F.Supp. 925.

■■ Petitioner apparently also contends that the seriousness of the offense is not a factor which the Board can properly consider in making its parole determinations and hence the guidelines are invalid. This court has previously rejected this contention. Wiley v. United States Board of Parole, M.D.Pa.1974, 380 F.Supp. 1194, 1196–1197. The se-

---

5. That petitioner's salient factor score is 7 is apparent from the factual information contained in the institutional progress report

and the Guideline Evaluation Worksheet, 39 Fed.Reg. § 2.20 (1974), which sets forth the manner in which the score is computed.

riousness of the offense and hence the effect parole of an offender may have on deterrence of criminal conduct clearly is a proper basis for parole denial since this factor is relevant to and can be determinative of the question of whether the offender's release is compatible with the welfare of society, a criterion specifically mandated by 18 U.S.C.A. § 4203. Wiley v. United States Board of Parole, 380 F.Supp. at 1197. As stated by the court in Battle v. Norton, D.Conn.1973, 365 F.Supp. 925, 931:

"Petitioner contends that depreciating the seriousness of the offense cannot lawfully be even included among the reasons for a parole decision. The Board views this factor as relevant to its second statutory criterion. This is apparent from the new pilot project regulations which specify as an appropriate reason for parole denial: '(1) Release at this time would depreciate the seriousness of the offense committed and would thus be incompatible with the welfare of society.' 28 C.F.R. § 2.15(a)(1) (revised). Petitioner reads the second criterion as if it were protection of society from future acts of the inmate. (Pet.Br. 5). That reading duplicates the first criterion. *When Congress permitted the Board to consider the welfare of society after determining whether the prisoner was likely to be law-abiding upon release, it did not preclude the Board's consideration of general deterrence, the concern that an early release of one charged with a serious offense might lessen the deterrent effect upon others contemplating the same offense.* At a minimum that is a reasonable construction to have been made by the agency administering the statute. *Cf.* Thorpe v. Housing Authority of City of Durham, 393 U.S. 268, 276, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); Power Reactor Development Co. v. International Union of Electrical, Radio and Machine Workers, AFL–CIO, 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961).

"Whether and to what extent general deterrence should be considered in parole decisions as a matter of policy is not a matter for this Court. See Frankel, Lawlessness in Sentencing, 41 Cinc.L.Rev. 1, 41–42 (1972). So long as the factor is within the discretion vested in the Board by Congress a parole decision relying upon it is immune from judicial interference." (Emphasis supplied.)

What petitioner is really contending is that the parole decision must focus exclusively on the inmate's progress toward rehabilitation, and that such an approach precludes the Board from designating any minimum period of time to be served in view of the seriousness of the offense. Congress, however, has determined that the parole system should not focus solely on rehabilitation of the inmate but also on the safety and welfare of society generally. 18 U.S.C.A. § 4203. Thus, the Board has the authority to consider the seriousness of the offense in its parole decision-making. Therefore, the "depreciating the seriousness of the offense" reason, without further elaboration, is a proper and adequate reason for denial of parole when the Board denies parole and continues confinement to a point *within* or *prior to* the prisoner's appropriate guideline period, Kohlman v. Norton, D. Conn.1974, 380 F.Supp. 1073; Wiley v. United States Board of Parole, supra; Battle v. Norton, supra. It should be noted, however, that this reason alone, without further elaboration, cannot adequately support continued confinement *beyond* the maximum guideline period, because the guideline table already assesses the customary seriousness of the offense. Diaz v. Norton, D.Conn.1974, 376 F.Supp. 112, 115. If, however, there are specific aggravating circumstances with respect to the offense committed in a particular case, the Board may deny parole and continue confinement beyond the guideline maximum for the reason release would depreciate the seriousness of the offense, *provided* the Board elaborates on this reason by stating the ag-

gravated circumstances that increase the severity of the offense behavior beyond that of the customary case.

██ In the instant case the Parole Board did not rely solely on the "depreciating the seriousness of the offense" reason for denying parole and continuing petitioner's confinement to February 1975. In addition, the Board expressed the view that because of petitioner's serious past criminal pattern, there was not a reasonable probability that he would remain at liberty without violating the law and, moreover, he was in need of additional institutional treatment, specifically in the area of counseling, to enhance his ability to lead a law abiding life. These reasons are adequate to support continued confinement not only within but beyond the maximum table guideline period. Title 18, U.S.C.A. § 4203 establishes as a statutory prerequisite for release on parole a determination by the Parole Board that there is a "reasonable probability that such prisoner will live and remain at liberty without violating the laws." Petitioner's past criminal record, listing a total of six convictions,[6] provides a sufficient basis for the Board's conclusion that there is not a reasonable probability that he would live at liberty without violating the law. Absent an abuse of discretion amounting to the denial of a constitutional right, and absent a decision that is clearly inconsistent with the broad statutory criteria, a court will not review the Board's discretion in denying an application for parole. The court will not substitute its judgment for that of the Board as to whether the rehabilitation of the inmate and the welfare of society generally would be best served by permitting him to serve his sentence beyond the confines of prison rather than by being continued in physical confinement. Wiley v. United States Board of Parole, 380 F.Supp. at 1197–1198. As the fore-

going discussion makes clear, the Parole Board's decision with respect to petitioner was not arbitrary or capricious and was not an abuse of discretion. The court rejects petitioner's contention that the reasons relied upon by the Board for its decision are improper and inadequate.

██ The court believes that the Parole Board should state its reasons for its parole decision after the (a)(2) record review in the same manner it does after the initial in-person hearing. Thus, in the instant case, the Board should have restated the Board's original reasons for parole denial rather than simply informing the inmate that no change was warranted in his parole status. In addition, the court holds that the Board, after a § 4208(a)(2) record review (see Stroud v. Weger, M.D.Pa.1974, 380 F.Supp. 897), should comply with 39 Fed.Reg. § 2.13, which requires that the prisoner be furnished a guideline evaluation statement which includes the prisoner's salient factor score and offense severity rating, in addition to the Board's reasons for its decision.

The court now turns to petitioner's assertion that the record review ordered by the court violates the Administrative Procedure Act (A.P.A.), 5 U.S.C.A. § 500 et seq., because the Act affords petitioner the right to appear in person and to actively participate in all parole proceedings at which the question of his suitability for release on parole is to be determined. In support of this contention petitioner relies on 5 U.S.C.A. §§ 554, 555.

██ Assuming *arguendo* that the Parole Board is an "agency" as that term is defined in the A.P.A., 5 U.S.C.A. § 551(1), and hence certain provisions of the A.P.A. may apply to the Board, *see* Pickus v. United States Board of Parole, D.C.Cir., 1974, 507 F.2d 1107

---

6. deVyver, age 29, has been convicted of the following offenses: carrying a concealed weapon, indecent liberty with minor boys, carnal abuse, possession of police card, interstate transportation of a stolen motor vehicle, and theft of a pistol valued at over one hundred dollars. Presently he is incarcerated at Lewisburg for his seventh offense, a firearms violation.

(decided October 11, 1974); Mower v. Britton, 10 Cir., 1974, 504 F.2d 396 (filed September 4, 1974); King v. United States, 7 Cir. 1974, 492 F.2d 1337, the court holds that the procedural requirements of the Act contained in 5 U.S.C.A. §§ 554, 555 do not apply to parole decision-making.

Section 554 applies to "every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing," and in these cases: "(c) The agency shall give all interested parties opportunity for— (1) the submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment when time, the nature of the proceeding, and the public interest permit; and (2) to the extent that the parties are unable so to determine a controversy by consent, hearing and decision on notice and in accordance with sections 556 and 557 of this title." Sections 556 and 557, which apply only if Section 554 is applicable to parole proceedings, establish additional requirements with respect to the conduct of administrative hearings. Section 554 applies only to hearings that are "required by statute." In Wong Yang Sung v. McGrath, 1950, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616, the Supreme Court construed this language as limiting Section 554 to hearings which are statutorily or constitutionally required. The Court stated that Section 554 is not applicable to hearings administrative agencies hold by regulation, rule, custom, or special dispensation. 339 U.S. at 50, 70 S.Ct. 445. Thus, although Section 554 defines the content of a hearing procedure when a hearing is constitutionally or statutorily required, it does not independently create the right to a hearing. Wong Yang Sung v. McGrath, 339 U.S. at 50, 70 S.Ct. 445; Aircrane, Inc. v. Butterfield, E.D.Pa.1974, 369 F.Supp. 598, 608.

There is no requirement for any hearing or adjudication in the statute authorizing parole and creating the Parole Board, 18 U.S.C.A. §§ 4201–4203, 4208, and therefore there is no statutory requirement that the Parole Board adjudicate on the record after hearing. United States ex rel. Carioscia v. Meisner, N.D. Ill.1971, 331 F.Supp. 635, 643–644. This court has held that the Constitution does not require the Parole Board to hold evidentiary or adversary hearings when it performs its parole decision-making function and that a prisoner is not constitutionally entitled to the opportunity to present witnesses and documentary evidence in support of his release on parole. Wiley v. United States Board of Parole, M.D.Pa.1974, 380 F.Supp. 1194, 1198–1201. Therefore, since the Parole Board is not constitutionally nor statutorily required to adjudicate on the record after hearing with respect to a prisoner's suitability for parole release, Section 554 of the A.P.A. does not apply to the Board's parole decision-making. Cf. Hyser v. Reed, 1963, 115 U.S.App.D.C. 254, 318 F.2d 225; Hiatt v. Compagna, 5 Cir. 1949, 178 F.2d 42, aff'd per curiam by an equally divided court, 1950, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639; Washington v. Hagan, 3 Cir. 1960, 287 F.2d 332; United States ex rel. Carioscia v. Meisner, N.D.Ill.1971, 331 F.Supp. 635; Lesser v. Humphrey, M.D.Pa.1950, 89 F. Supp. 474.

Petitioner also contends that 5 U.S. C.A. § 555(b) [7] entitles him to appear

---

7. 5 U.S.C.A. § 555(b) provides:

"(b) A person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel or, if permitted by the agency, by other qualified representative. A party is entitled to appear in person or by or with counsel or other duly qualified representative in an agency proceeding. So far as the orderly conduct of public business permits, an interested person may appear before an agency or its responsible employees for the presentation, adjustment, or determination of an issue, request, or controversy in a proceeding, whether interlocutory, summary, or otherwise, or in connection with an agency function. With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it. This subsection does not grant or deny a person who is not a lawyer the right to appear for or represent others before an agency or in an agency proceeding."

in person at any parole review given him by the Parole Board and thus the record review ordered by the court violates this section of the A.P.A. First, assuming that Section 555(b) applies to the Parole Board, it would not apply to the parole review ordered by the court for petitioner in the instant case because he had been sentenced pursuant to 18 U.S.C.A. § 4208(a)(2), *see* Stroud v. Weger, M.D.Pa.1974, 380 F.Supp. 897.

 Section 555(b) does not require an agency to hold hearings in matters where the ultimate decision will not be enhanced or assisted by receipt of evidence. City of Lafayette v. Securities & Exchange Commission, D.C.Cir.1971, 454 F.2d 941. The court holds that the affirmative grant of the right to appear apparently bestowed by Section 555(b) is not blindly absolute, without regard to the status or nature of the proceedings and concern for the orderly conduct of public business. Easton Utilities Commission v. Atomic Energy Commission, 1970, 137 U.S.App.D.C. 359, 424 F.2d 847, 852. In Stroud v. Weger, M.D. Pa.1974, 380 F.Supp. 897, the court decided that a prisoner sentenced pursuant to 18 U.S.C.A. § 4208(a)(2) who receives a continuance to a date past one-third of his maximum sentence at the initial in-person parole hearing should receive upon completion of one-third of his sentence a review by an examiner panel on the record, which includes a current institutional progress report. The court explicitly rejected the contention that a second in-person hearing in place of the aforementioned record review was due the (a)(2) prisoner, because an in-person hearing on whether the inmate's institutional program achievement had been so exceptional as to warrant early parole release—i. e., earlier than the period of incarceration indicated by the Board's paroling guidelines, 39 Fed.Reg. § 2.20, and therefore earlier than the Board had decided at the inmate's initial in-person hearing—would be of little benefit and would only hinder parole decision-making by increasing needlessly the already heavy burden of the Board.

In short, the court concluded in *Stroud* that the question of whether a prisoner's institutional performance had been so exceptional as to warrant early parole release could be adequately reviewed by an examiner panel on the record utilizing a current institutional progress report. 380 F.Supp. at 901. For the same reasons, the court concludes that Section 555(b) does not require an in-person hearing in place of the record review since Section 555(b), even if applicable to the Board, does not require useless hearings, particularly when such hearings could overburden and thereby hinder the orderly functioning of the parole system.

Moreover, the court doubts that Section 555(b) is applicable at all to parole decision-making. In Hiatt v. Compagna, 5 Cir. 1949, 178 F.2d 42, aff'd per curiam by an equally divided court, 1950, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639, the Court of Appeals for the Fifth Circuit held that the procedures of the Parole Board are fixed by the parole statute and the procedural requirements contained in the A.P.A. have no application to the Parole Board. In Hyser v. Reed, 1963, 115 U.S.App.D.C. 254, 318 F.2d 225, in an opinion by Chief Justice (then Judge) Burger, the court held that the A.P.A. is not applicable to parole revocation proceedings. Most importantly, in Washington v. Hagan, 3 Cir. 1960, 287 F.2d 332, the Court of Appeals for the Third Circuit held that the A.P.A. does not apply to parole revocation proceedings. If the Act does not apply to parole revocation proceedings, *a fortiori* it does not apply to parole decision-making. *Cf.* Lesser v. Humphrey, M.D.Pa.1950, 89 F.Supp. 474 (The A.P.A. is not applicable to proceedings of Good Time Board at penitentiary in proceedings to revoke prisoner's good time allowance because of alleged violation of prison rules.).

For the foregoing reasons, this court holds that Section 555(b) does not require that an (a)(2) prisoner be given an in-person hearing at the one-third point of his sentence. Having previous-

ly held that Section 554 does not apply to parole decision-making, the court holds that petitioner's contention that he is entitled to the procedural rights, including an in-person hearing, afforded by Sections 554 and 555(b) of the A.P.A. instead of a record review is without merit.

Finally, petitioner contends that the Board's paroling policy guidelines, 39 Fed.Reg. § 2.20 (1974), were promulgated in violation of Section 553 of the A.P.A., 5 U.S.C.A. § 553, which requires that federal agency rule-making be attended by advance public notice and opportunity for interested persons to participate through oral or written submission of data or opinion. Petitioner relies on Pickus v. United States Board of Parole, D.C.Cir., 507 F.2d 1107 (decided October 11, 1974). In that case the Court of Appeals for the District of Columbia held that the Parole Board had failed to comply with Section 553 in its promulgation of the paroling policy guidelines, that the guidelines therefore had been illegally promulgated, and thus they were invalid.

■ Even if the holding in Pickus were to be applied in this case, petitioner would not be entitled to the habeas corpus relief he seeks. Assuming the paroling guidelines were improperly promulgated, they are nonetheless, so far as substance is concerned, consistent with the statutory criteria for parole release embodied in 18 U.S.C.A. §§ 4202, 4203. Wiley v. United States Board of Parole, 380 F.Supp. at 1197. Since the criteria relied on by the Board in the instant case are consistent with the substantive statutory directives, and since there is a reasonable basis for the Board's decision not to release petitioner on parole, petitioner is not entitled to the habeas corpus relief which he seeks —i. e., discharge from custody. The assumed failure of the Board to promulgate its paroling guidelines in accordance with 5 U.S.C.A. § 553 in no way undermines the parole decision reached by the Board in the instant case.

■ In Pickus three federal prison inmates had petitioned the Parole Board to conduct a public rule-making proceeding consistent with 5 U.S.C.A. § 553. When the Board failed to act on their petition, the inmates filed a complaint in federal court pursuant to Section 10 of the A.P.A., 5 U.S.C.A. §§ 701–706, seeking to force the Board to comply with the requirements set forth in 5 U.S.C.A. § 553 with respect to agency rule-making. But as the court stated in Pickus:

"We have considered the Board's argument that its promulgation of parole selection criteria is not subject to judicial review—whether or not subject to the Act—because release on parole is committed to agency discretion within the meaning of Section 10 of the Act, 5 U.S.C. § 701(a)(2), by 18 U.S.C. § 4203(a). But we are not reviewing the granting or denying of parole in a particular case, action which may reflect an unreviewable exercise of agency discretion. We are not even reviewing the merits of the rules and standards the Board has adopted. The appellees' complaint and our consequent adjudication address themselves solely to the procedures by which those rules may be formulated. The justiciability of such a complaint depends upon Section 10, particularly subsection (e), of the Act, as already discussed, not the discretionary character of the Board's determinations as to when parole shall be granted. The giving of notice of rule-making and the consideration of consequent submissions by interested persons might inform, but would not otherwise impinge upon, the Board's discretion in framing its standards and guidelines."

It should be noted that the Court of Appeals for the Third Circuit has consistently held that the A.P.A. does not provide an independent basis for jurisdiction and hence this district court would not have jurisdiction to entertain suits challenging the validity of Parole Board action which rely on the A.P.A. as their source of jurisdiction. Grant v. Hogan,

3 Cir., 505 F.2d 1220 (filed November 20, 1974); Zimmerman v. United States, 3 Cir. 1970, 422 F.2d 326, 330.

Regardless of whether the paroling guidelines were promulgated in compliance with Section 553, the Board's parole decision in the instant case is amply supported by the record and clearly is not arbitrary or capricious. The criteria utilized by the Board in reaching its decision are consistent with the substantive statutory criteria for parole embodied in 18 U.S.C.A. §§ 4202, 4203 and the reasons relied upon are proper under these sections and meaningful. *See* Wiley v. United States Board of Parole, M.D.Pa.1974, 380 F.Supp. 1194;

Kohlman v. Norton, D.Conn.1974, 380 F.Supp. 1073; Battle v. Norton, D.Conn. 1973, 365 F.Supp. 925.

Accordingly, a writ will issue discharging petitioner from custody unless within thirty days the Parole Board accords petitioner a review by an examiner panel on the record which includes a current institutional progress report that fully complies with Bureau of Prisons Policy Statement No. 7200.12 (including an evaluation of release readiness pursuant to Section 7 of the above Policy Statement) and is otherwise consistent with this memorandum. All other relief requested by petitioner will be denied.

APPENDIX

**BUREAU OF PRISONS** **WASHINGTON, D. C. 20537**

L. Taylor - Case Management

# Policy Statement

7200.12

**SUBJECT:** PROGRESS REPORT

4-5-72

1. POLICY. It is the policy of the Bureau of Prisons to maintain current information regarding an offender's response to confinement. This policy is implemented by continuously updating the Central file by various means but primarily by completing formal progress reports annually and as requested by the United States Board of Parole.

2. PURPOSE. To implement changes in the requirements for progress reports and to provide instructions regarding the preparation of these reports and the use of the required format.

3. DIRECTIVES AFFECTED. Memorandum from the Assistant Director dated August 11, 1955 is cancelled.

4. BACKGROUND. Generally, progress reports serve as a basis for making decisions related to treatment programs and parole consideration. As such, it is important that they are prepared in a professional manner and contain the kind of information necessary to make appropriate decisions. However, periodic surveys of progress reports have revealed that they are not consistent in terms of format or content. In many instances, the reports do not accurately reflect the staff's total treatment efforts and expenditure of resources. To assure that progress reports meet the minimum requirements as identified by the Bureau of Prisons and the United States Board of Parole, the following format and instructions have been developed.

5. FORMAT. A sample of the format to be used in preparing progress reports for institutional review hearing, special progress reports, and annual reports to the Bureau has been attached to this policy statement. The attached sample also provides some brief instructions

which should be reproduced and made available to caseworkers as a guide in preparing the required reports.

As indicated by the attached sample, the first page of all progress reports should be typed on Classification Form 3. Initially, precautions will have to be taken to assure that the necessary information and subheadings are added to make the report consistent with the attached format. A revised Classification Form 3 will be issued in the near future which will reflect the changes described in this policy statement. The progress report may utilize as many pages as necessary to adequately report on the progress of an individual. However, in all cases, the second and subsequent pages of the report should be typed on Classification Form 2 with the appropriate format being reproduced. In addition to the brief instructions on the attached format, the following more extensive instructions should be referred to often and used as a vehicle for intradepartmental training sessions.

6. PREPARATION OF PROGRESS REPORTS—Generally the progress report will summarize information related to the offender's offense and background, response to institutional experience, release readiness and plans. By design, the current offense and background portion of the report will cover many of the same areas included in the Classification Summary. Although it is necessary to briefly summarize known information under each heading, material previously reported on in the Classification Summary should be represented in only the most concise style. On the other hand, new information should receive greater emphasis and be integrated into the progress report in such a way as to make it a totally independent summary. The initial progress report will generally present information in more detail than will be necessary in subsequent reports.

A. *Progress Report*: The identifying information which must be included in the heading of progress reports, does not require extensive explanation. The following is a list of information which must be completed:

(1) *IRH, SPR, Annual Report to the Bureau.* The type of report being prepared should be identified by placing a mark (x) in the appropriate space.

(2) *Name.* Use the offender's committed name in the following order: last, first, middle.

(3) *Registration Number.* Use the complete registration number and institution code.

(4) *Offense.* Use appropriate legal terms to identify the offense. Abbreviations can be used if necessary to accommodate available space.

(5) *Age.* Record age at the time the report is being prepared.

(6) *Sentence.* Record sentencing procedure and number of months and years received.

(7) *Began.* Indicate what date the sentence began.

(8) *Months Served.* Add the total number of months served on current sentence.

(9) *Days of EGT.* Enter the total number of extra good time earned to date.

(10) *Days of FGT.* Enter the total number of days that are currently in forfeiture status.

(11) *Tentative Release.* Calculate current mandatory release date minus any extra good time earned.

(12) *Last Board Action & Date.* Indicate the nature and date of last Board action, plus any special request or requirements.

B. *Current Offense.* Since information regarding the current offense has been summarized previously in the Classification Summary, the caseworker should stress only the highlights related to the official version, offender's explanation and codefendants. In most instances, this will simply consist of a statement or two in each of the areas mentioned. If new information is available, it should be presented in whatever detail is warranted, based on its relevance.

(1) *Official Version.* Provide a very *brief* summary of the offense and loss to the victim.

(2) *Offender's Explanation.* Prior to writing a progress report, caseworkers should re-examine an inmate's attitude and explanation regarding his involvement in the offense. If no new information is obtained, it will be enough to summarize the highlights of information presented in the Classification Summary. Often, however, attitudes change and sometimes explanations may vary from the initial statements. When this happens, the caseworker should make a special effort to incorporate relevant material in the report.

(3) *Codefendants.* The progress report should list the names of all known codefendants and when possible, information regarding their sentence, present location and latest Parole Board action. In some instances, it may also be relevant to describe the role of codefendants in the offense.

C. *Background.* Although it is possible that institution personnel will gain additional information related to an offender's background that was not available at Classification, generally this section of the progress report will summarize information reported previously. It is important to stress, however, that only the most relevant and essential information should be reiterated at this point. New information will usually be presented in somewhat more detail. All progress reports should be written in such a way as to stress their independence. Only the minimum amount of information necessary to achieve this independence should be recorded under background material.

(1) Prior Record. In two or three sentences, briefly summarize the offender's experience with the criminal justice system. Highlights such as age at first arrest, number of arrests and convictions, and types of offenses should be emphasized. New information should also receive appropriate attention.

(2) Detainers. Simply identify the current status of all known pending charges and detainers.

(3) Past History. Again, only the highlights of an individual's social, educational, military and employment history should be

recorded in this section of the progress report. Generally, one or two sentences for each topic will be sufficient. Care should be taken, however, to select only the most relevant information to report.

D. Institutional Progress. Information presented under Institutional Progress should be a summary of an individual's total response to confinement. In the initial progress report, it will be necessary to provide much more detail than will be necessary in subsequent reports. Since the information is being presented for the first time, it will also be more extensive than the material provided under "Current Offense" and "Background". As subsequent progress reports are written, the summary of institutional progress will be prepared similar to the current offense and background information. Only highlights of previously known material will be reiterated and new information should be incorporated in such a way as to bring the reader up-to-date.

(1) Goals. Caseworkers should present in summary form the treatment and training goals established for an individual, and indicate what progress has been made towards the completion of these goals. In some instances, it will also be necessary to explain lack of progress and indicate whether or not alternate goals are being developed.

(2) Institutional Adjustment. In this section, caseworkers will report on some factual items such as conduct, leisure time activity and work assignment. In addition to these usual items, however, an effort should be made to summarize the treatment committee's or team's opinion regarding the extent of success or failure in program planning. The amount of effort and resources expended should also be indicated especially for the hard to motivate individual. All information should be summarized in such a way as to provide the reader with a complete but concise *description and evaluation* of the offender's total response to confinement.

There should be an attempt to limit the information in this section to one paragraph.

(3) *Physical and Mental Health.* A statement regarding an individual's physical and mental health is usually sufficient. If problems are diagnosed, however, it will be necessary to describe the extent of these problems and indicate what effect it will have on the offender's employability and release readiness. Occasionally, it may also be necessary to attach separate psychiatric or medical reports, especially, if they are requested by the Board.

E. *Release Resources and Plans.* Efforts to identify release resources and develop suitable plans should ideally begin when an offender is first committed to the institution. By the time the parole progress report is written, the caseworker and inmate should have a definite plan developed which utilizes verified resources. Information regarding this phase of programming will be summarized under the following three subheadings.

▬▬▬▬▬

(1) *Pre-release Resources.* In a few sentences, the caseworker should summarize an inmate's current or anticipated involvement in pre-release programming within the institution or in the community. Program resources such as community treatment centers, study release, furloughs, and town trips should be considered.

(2) *Post Release Resources.* An effort must be made to identify and verify all available post release resources whether they will be used or not. It is not necessary to record this information in great detail but resources such as family, community programs, savings, employment placement services, and private agencies should be considered. Actual release plans need not be listed.

(3) *Post Commitment Plans.* At this point, the inmate's complete and verified release plan should be presented. If for some reason the caseworker has not been able to develop or verify a plan, the source of difficulty should be identified. Generally, information regarding residence, proposed employer and advisor will be sufficient. If the United States Probation Office has already investigated the residence, employment, and advisor and has recommended it be approved by the Board, it should be so indicated.

 a. *Residence.* Provide the complete address. If the offender plans to reside with other persons, their relationship should also be considered.

 b. *Employment.* Provide the complete name and address. Information regarding type of work and starting salary should also be presented when known.

 c. *Advisor.* Provide the name and address of the advisor and indicate his relationship to the offender. In some instances the United States Probation Officer may recommend or agree to act in lieu of an advisor. In these cases, that fact should be indicated with a recommendation that the advisor requirement be waived.

7. EVALUATION OF RELEASE READINESS. An evaluation of release readiness should be prepared on all inmates being considered for parole. The summary will be prepared on Classification Form 2, and must be attached to the progress report according to the attached sample. Information under the following two subheadings will be emphasized.

A. *Probable Community Adjustment.* Each treatment team or committee should carefully consider the offender's response to his institutional experience and then make an evaluation of his ability to remain in the community without additional violations of the law. Sufficient explanation should also be given to allow the reader to determine the basis of your conclusion. Generally, this information can be presented in a few sentences.

B. *Recommendation.* Based on the above evaluation, each treatment team or committee will make a recommendation for or against parole. If the recommendation is positive, a statement should be made regard-

ing post commitment treatment needs and suggested program involvement. If a recommendation is made for a continuance, a statement should be made in reference to an appropriate future review date. Under some circumstances it may not be advisable to make a recommendation at all. A recommendation will usually be made except in the most sensitive situations involving individuals who have received a great deal of publicity as a result of their offense or status in the community. It is not expected that this will occur frequently, but if it is considered necessary, the Board should be so advised.

8. ANNUAL REPORTS. Interim annual reports are prepared on all offenders who have received a continuance of eighteen months or more (see P.S. 40100.19). This includes all individuals committed under the provisions of the Federal Juvenile Delinquency Act, the Youth Corrections Act, wherever confined, and all other offenders confined in the Bureau's youth institutions. The foregoing instructions and format applies to reports of this nature with one exception. The *Evaluation of Release Readiness*, Section 7, need not be prepared. In its place, the classification team or committee should comment on any planned program changes. Copies of this report should be forwarded to the attention of the Board of Parole. Annual reports to the Bureau must also be prepared on individuals who are not yet eligible for parole. Again, the same format and instructions should be followed up to the section entitled *Release Resources and Plans*, (6–E). The format from 6–E on should not be followed for annual reports to the Bureau. In its place, caseworkers should make a statement regarding the offender's proposed residence, employment, and advisor. A comment should also be made in reference to any planned program changes.

9. TRANSFER SUMMARIES. Transfer summaries should be prepared like annual reports to the Bureau on individuals not yet eligible for parole. Information under the various headings of the format should be short and to the point with a goal of bringing the proposed receiving institution up to date on an individual's progress. Transfer summaries should be prepared on all individuals who are being recommended for transfer and whose progress has not been summarized for 90 days or more. The format from 6–E on need not be followed, but relevant information regarding an individual's release plans must be substituted.

10. DISTRIBUTION OF PROGRESS REPORTS. A copy of all progress reports, including annual reports, should be forwarded to the appropriate United States Probation Office. In mailing these reports to the Bureau, parole progress reports should be addressed to the attention of the Parole Executive or Youth Division Executive. Annual reports to the Bureau and transfer summaries should be addressed to the attention of the Chief, Case Management. Interim annual reports should be addressed to the attention of the Youth Division Executive, United States Board of Parole. Since the Parole Board and the Bureau of Prisons share central file material, it is not necessary to send more than one copy of any report.

> (s) Norman A. Carlson
> NORMAN A. CARLSON
> Director, Bureau of Prisons
> Commissioner, Federal Prison Industries, Inc.

BP–Class–3 (Master)
(Rev. 2–72)

Date _____

### UNITED STATES DEPARTMENT OF JUSTICE
### BUREAU OF PRISONS

_____
Institution

### PROGRESS REPORT

IRH_____ PR_____ ANNUAL REPORT TO BUREAU _____
Name: _____ Reg. No.: _____
Offense: _____ Age: _____
Sentence: _____ Began: _____ Months Served: _____
Days EGT: _____ Days FGT: _____ Tentative Release: _____
Last Board Action & Date: _____

### CURRENT OFFENSE

Official Version: A statement of the offense, including loss to victim.

Offender's Explanation: A current summary of the offender's explanation and attitude regarding the offense.

Codefendants: Provide significant and available information including names, sentencing data, present location and latest Parole Board action, if known.

Classification Form 2–Copy
Rev. January 1939

### UNITED STATES DEPARTMENT OF JUSTICE
### BUREAU OF PRISONS

### SPECIAL PROGRESS REPORT

| Committed Name | Reg. No. | Date |
| --- | --- | --- |

### BACKGROUND

Prior Record: In two or three sentences, briefly summarize the offender's experience with the criminal justice system, i. e., age at first

arrest, number of arrests and convictions, types of offenses and any new information not previously available.

Detainers: Current status of all pending charges and detainers.

Past History: A brief summary of significant information related to the offender, such as social history, education, military experience and employment. This paragraph should also include any information which was not previously available.

## INSTITUTIONAL PROGRESS

Goals: Summarize goals established, goals completed and progress towards remaining goals.

Institutional Adjustment: Evaluate the offender's response to institutional experience, i. e., conduct, work assignments, leisure time, and changes in character traits.

Physical and Mental Health: Indicate the status of the offender's current mental and physical health including a comment regarding employability. Separate psychiatric or psychological reports may be attached to the progress report.

Classification Form 2–Copy
Rev. January 1939 Page _____

UNITED STATES DEPARTMENT OF JUSTICE
BUREAU OF PRISONS

SPECIAL PROGRESS REPORT
(Continued)

Name Reg. No. Date

## RELEASE RESOURCES AND PLANS

Pre-Release Resources: Summary of current or anticipated involvement in pre-release programming, i. e., work release, Community Treatment Center, study release, furloughs, town trips.

Post Release Resources: Statement of verified resources available for the offender after release, i. e., family, private agencies, community programs, savings, employment placement officer and others.

Post Commitment Plans:
 A. Residence—Address and relationship to the offender.

 B. Employer—Name and address of the employer.

 C. Advisor—Name and address and relationship of the advisor or USPO in lieu of an advisor.

INFORMATION UNDER "RELEASE RESOURCES AND PLANS," AND "EVALUATION OF RELEASE READINESS," NEED NOT BE PREPARED FOR ANNUAL REPORTS TO THE BUREAU ON OFFENDERS WHO ARE NOT YET ELIGIBLE FOR PAROLE. (see Section 8 for instructions).

Classification Form 2–Copy

UNITED STATES DEPARTMENT OF JUSTICE
BUREAU OF PRISONS

SPECIAL PROGRESS REPORT
(Continued)

| Name | Reg. No. | Date |
|---|---|---|

### EVALUATION OF RELEASE READINESS

Probable Community Adjustment: Evaluation of offender's ability to remain in the community without violating the law.

Recommendation: A statement for or against parole. If the recommendation is negative, this paragraph should also include a comment regarding a future parole review. If the recommendation is positive,

summarize post commitment treatment needs and suggested program involvement. In a few instances it may be necessary to explain different staff opinion regarding a recommendation and in special situations it may not be advisable to make a recommendation at all.

AN "EVALUATION OF RELEASE READINESS" NEED NOT BE PREPARED FOR INTERIM ANNUAL REPORTS SUBMITTED IN CONJUNCTION WITH POLICY STATEMENT 40100.19. THIS STATEMENT REQUIRES ANNUAL REPORTS TO BE SUBMITTED ON OFFENDERS WHO HAVE RECEIVED A PAROLE CONTINUANCE OF EIGHTEEN MONTHS OR MORE AND ARE UNDER THE PURVIEW OF THE YOUTH DIVISION OF THE BOARD OF PAROLE. THIS INCLUDES PERSONS COMMITTED UNDER THE PROVISIONS OF YCA AND FJDA WHEREVER THEY ARE CONFINED AND ALL OFFENDERS LOCATED IN YOUTH INSTITUTIONS.

BUREAU OF PRISONS
UNITED STATES PENITENTIARY
LEWISBURG, PENNSYLVANIA

# POLICY STATEMENT

| N E-7200.13 |
| 4-8-74 |

SUBJECT DISCLOSURE O F PAROLE AND SPECIAL PROGRESS REPORTS

1. PURPOSE: To provide operational guidelines for the disclosure, to inmates, of Parole/Special progress reports.

2. EXPLANATION: Experience with the U. S. Parole Board Regionalization Projects has provided us with some basic insights relating to the matter of disclosure of progress reports. Based upon this, the Warden's Advisory Group on Inmate Programs solicited feedback from institutions, discussed the information received, and as a group recommended that progress reports be disclosed to offenders. This Policy Statement addresses itself only to the disclosure of progress reports and not of routine classification studies or other correspondence.

3. DIRECTIVES AFFECTED: BOP Policy Statement 7200.12 and 7200.13.

4. ACTION:
 a. The writer of the report as well as the team should have a good understanding of the inmate being written about and should tailor the information so that it conveys not only pertinent information but is appropriately sensitive to the inmates needs and feelings.

b. The entire progress report, with the exception of the recommendation section, evaluation of community adjustment, and confidential information from other agencies, will be disclosed to the offender.

c. The caseworker will prepare the progress report and present it to the team. If the team concurs with the progress report then the inmate will sign and date the original copy of the progress report and at the same time a copy will be given to him. His signature will not necessarily indicate agreement with the content of the report but merely his receipt of a copy of the report.

d. When the Parole Board specifically requests the inclusion of a psychiatric report then that report should be written with the expectation that its entire content may be known to the offender being discussed. The report should be written in nontechnical language so that it will be understandable by non-professional personnel.

e. The recommendation section of the progress report will continue to be an integral part of the report but will not be disclosed since this is directed to the Parole Board and their final decision may well differ from our recommendations.

f. Additionally confidential information from other agencies will not be disclosed.

g. The two evaluative sections as well as all confidential information from other agencies will be prepared on an additional page of the progress report which will remain in the file. For example, if there is information relating to social history which cannot be disclosed to the inmate then it will appear on the additional page under the heading—Social History. The recommendation will be the first entry on the additional sheet.

h. This Policy Statement is effective April 8, 1974, and progress reports written prior to this date will not be effected.

5. <u>INITIATING OFFICE</u>: CASE MANAGEMENT.

<u>THIS POLICY STATEMENT REMAINS IN EFFECT UNTIL CANCELLED OR SUPERSEDED.</u>

(s) M. R. Hogan
M. R. HOGAN
WARDEN