**UNITED STATES of America**

v.

**Ames MANDERVILLE.**

**Crim. No. H–74–133.**

United States District Court,
D. Connecticut.

June 30, 1975.

prison term for violation of 18 U.S.C. § 2113(c) (1970), possession of stolen bank funds. He was incarcerated at the Federal Correctional Institution at Danbury where, on February 21, 1975, he was provided a hearing before the United States Board of Parole (hereinafter "Board"). The Board denied his application for parole and continued his case to the expiration of his sentence. Following that denial, on March 3, 1975 the defendant filed the instant motion to reduce his sentence pursuant to Fed. R.Crim.P. 35.[1] He argues that an affirmative exercise of the court's discretion is appropriate here because only by reducing his sentence can the court approximately effectuate its original sentencing goals which were, he maintains, undermined by the Board's action.

Before considering the Board's decision in this case, some further background into the defendant's case and the basis for my original sentencing decision is warranted. Although pleading guilty to the charge of possession of stolen bank funds, the defendant, as indicated in the presentence report and the hearing conducted at the time of entry of his guilty plea, might have been a participant in an armed bank robbery along with his three co-defendants. However, the petitioner's role in the robbery— driver of the getaway car—was minor compared to that of his co-defendants. Furthermore, the defendant firmly maintained that he had not been involved in the planning of the robbery; indeed, he had no prior knowledge of the rob-

Thomas P. Smith, Asst. U.S. Atty., Hartford, Conn., for plaintiff.

Michael J. Churgin, Donald E. Sloan, Law Student Intern, Dennis E. Curtis and Stephen Wizner, New Haven, Conn., for defendant.

## RULING ON MOTION TO REDUCE SENTENCE

BLUMENFELD, District Judge.

On November 4, 1974, this court sentenced the defendant to a two-year

1. Rule 35 provides:
   "The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law.

It has been held that the 120-day period applies to the time within which the motion for reduction of sentence must be filed and not the time within which the court must act on that motion. See *Leyvas v. United States*, 371 F.2d 714, 719 (9th Cir. 1967); *Fuentes v. United States*, 371 F.Supp. 92 (D.P.R. 1973); *United States v. Ursini*, 296 F.Supp. 1152 (D.Conn.1968); *cf. United States v. Janiec*, 505 F.2d 983, 985 n. 3 (3d Cir. 1974), *cert. denied*, 420 U.S. 948, 95 S.Ct. 1332, 43 L.Ed.2d 427 (1975); *Dodge v. Bennett*, 335 F.2d 657 (1st Cir. 1964). I agree with this line of authority and thus hold that jurisdiction is present to act upon the defendant's timely filed motion.

bery, only learning that his co-defendants had robbed a bank, while he waited for them in his mother's car, upon later hearing news of the robbery on his radio. At that point, he demanded and was given a relatively small share of the proceeds.

I credited this explanation for a variety of reasons, among which were his demeanor at the time he explained his role in the crime, the fact that only one of his co-defendants advanced a conflicting version of the offense, and the decision of the United States Attorney to charge him by information with the crime of possession although charging his co-defendants with both the crime of actually stealing the money, 18 U.S.C. § 2113(b) (1970), and conspiracy, 18 U.S.C. § 371 (1970), an apparent recognition of the different levels of participation in the crime.[2] Taking into account that and other mitigating factors, I imposed upon him a two-year sentence while imposing five-year sentences upon two of his more culpable cohorts and an eight-year sentence, subsequently reduced to five, upon the third.[3]

In considering the defendant's application for parole, the Board applied to him the policy guideline table which has been adopted as a means of "promot[ing] a more consistent exercise of discretion . . . ." 28 C.F.R. § 2.20(a) (1974). As described by Judge Newman in *Battle v. Norton,* 365 F.Supp. 925, 929 (D.Conn.1973),

"[The] table has been constructed to indicate approximate ranges of time to be served for various combinations of two factors . . . . The first is severity of the offense, and the second is characteristics of the offender. Offenses have been grouped in six rows of categories from low to greatest severity. Offender characteristics have been grouped in four columns of categories from low to very high probability of favorable parole performance. At the intersections of each variable, the table sets out, in multi-month ranges, different time periods of incarceration that are to serve as a guide for the decision-maker considering a prisoner with particular offense severity and offender characteristics. For example, for a prisoner in the second most favorable category of offender characteristics and the lowest category of offense severity, the range of time before release is eight to twelve months." (Footnote omitted.)

*See Grasso v. Norton,* 520 F.2d 27, at 34 (2d Cir., 1975). The table, it is emphasized in the regulations, serves only as a guideline. Decisions outside of the guidelines may be rendered where appropriate. 28 C.F.R. § 2.20(c) (1974). In practice, however, this discretion is exercised infrequently. Peter Hoffman, research director for the Board of Parole and one of the designers of the guideline system, testified at a hearing on the instant motion[4] that in the period from

---

2. All defendants were originally charged in a three-count indictment with violation of 18 U.S.C. §§ 2113(a), (b) and (d) (1970). The co-defendants pleaded guilty to count two of the original indictment and one count of a supplementary information charging them with conspiracy, while the defendant pleaded to a one-count substituted information. All of these pleas obviously followed plea bargaining and resulted in reducing the sentence exposure for any defendant on any one count from 20 to 10 years. Nonetheless, as pointed out above, the prosecutor's decision to extract a guilty plea for the offense of conspiracy and actual participation in the robbery from the codefendants while not from the defendant is an indication of his view that the defendant was probably not involved in the planning of this crime.

3. All of these were "regular" sentences, meaning that the defendants were eligible for parole release upon completion of one-third of their respective sentences. 18 U.S.C. § 4202 (1970). In fact, however, the defendant was provided his initial parole hearing only six months following the commencement of his sentence (having been credited with three months of jail time). Apparently, it is the Board's policy to conduct the initial hearing two months short of the one-third point.

4. The defendant has also filed a petition for a writ of habeas corpus in which he challenges the legality of the Board's action. Mr. Hoffman's testimony was primarily directed to the issues, albeit similar to those under consideration here, involved in that action which is currently *sub judice.*

November 1974 through February 1975 only 14.6% of parole release decisions were made outside the guidelines. *See* Note, *Parole Release Decisionmaking and the Sentencing Process,* 84 Yale L.J. 810, 825 n.75 (1975).

Decisions outside the guidelines, however, are not the only way in which the Board may exercise relatively unstructured discretion under the current parole system. It may decide that "especially mitigating or aggravating circumstances in a particular case" warrant the assignment of a different severity of offense level than that listed in the guideline table. 28 C.F.R. § 2.20(d) (1974). Similarly, there are a variety of offenses which have not been listed in the table, and footnote 1 to that table instructs a parole hearing officer to determine the appropriate category "by comparing the severity of the offense behavior with those of similar offenses listed." 28 C.F.R. § 2.20 (1974). There is considerable room for the exercise of discretion in making such extrapolations, as illustrated by the instant case. *See* Note, *Parole Release Decisionmaking and the Sentencing Process, supra,* at 835–839.

In the instant case, the hearing examiner rated the defendant's offense behavior as being in the "very high" severity category and determined his salient factor score (meaning parole prognosis) to be within the "good" range.[5] With

that combination of parameters, the guideline table calls for a period of incarceration of between 36 and 45 months, clearly more than the 19 months which the defendant would serve in prison following the deduction of good time credit from his two-year sentence. The hearing examiner panel of the Parole Board determined that a decision outside of the guideline range was not warranted in the defendant's case and thus continued his case to the expiration of sentence.[6]

The Board's assessment of the defendant's crime as being in the "very high" severity category is clearly at variance with the assessment which I made at·the time of sentencing.[7] While the Board does not specifically state how it arrived at its determination, Mr. Hoffman's testimony sheds some light on the possible lines of reasoning which may have been followed. First, the Board may have considered that the crime of receiving stolen bank funds (which is not specifically listed in the table) was as serious as those crimes listed in the "very high" severity category, such as armed robbery, sale of hard drugs for profit, or extortion, and that no mitigating factors existed which would warrant a reduction in the severity rating. That such an assessment may have been made seems unlikely. The crime of receiving stolen funds itself is just not as serious as those listed in the "very high" category. In this court's view, at least, the crime

---

5. The Board's report to the defendant contained the following statement of reasons for its action:

"Continue to expiration. REASONS: Your offense behavior has been rated as very high severity. You have a salient factor score of 7. Guidelines established by the board which consider the above factors indicate a range of 36–45 months to be served before release for adult cases with good institutional program performance and adjustment. You have been in custody a total of 6 months. After careful consideration of all relevant factors and information presented, it is found that a decision outside the guidelines at this consideration does not appear warranted."

6. That decision has been subsequently affirmed on appeal at both the regional and

national levels. *See* 28 C.F.R. §§ 2.25, 2.26 (1974).

7. In *Battle v. Norton, supra,* the court upheld the validity of the guideline system against a challenge that it was impermissible for the Board to consider the severity of the offense as a basis for parole denial. *See Wiley v. United States Board of Parole,* 380 F.Supp. 1194 (M.D.Pa.1974). In instructing the Board to consider "the welfare of society" 18 U.S.C. § 4203(a), Congress, the court held, had not precluded a consideration of the impact which parole release decisions might have upon general deterrence. However, the court did not rule upon the Board's contention that it could base its decision upon offense severity to the exclusion of all other factors.

is much more akin to receiving stolen property with a value of less than $20,000, which is listed in the "moderate" severity category.

Secondly, the Board may have based the classification upon the offense with which the defendant was *originally* charged, armed bank robbery, 18 U.S.C. § 2113(a) (1970), a "very high" severity crime, rather than the offense of which he was convicted. If so, the Board would have made a factual determination at variance with the finding which was implicit in my original sentencing decision and which has now been made explicit. While Judge Newman has held in *Lupo v. Norton*, 371 F.Supp. 156 (D.Conn.1974) that the consideration of of alleged criminal conduct is proper when accompanied by appropriate procedural protections,[8] a somewhat different issue is presented when the Board bases its decision upon a factual determination contrary to one which informed the exercise of the sentencing court's discretion. Whether such action by the Board would unlawfully infringe upon the sentencing court's jurisdiction need not be answered in the context of this Rule 35 motion.[9] It is sufficient to note that the possibility that the Board may have acted on such a basis provides serious cause for concern that the Board has, in fact, subverted the court's original sentencing goals.

Finally, the Board may have assessed the severity of the crime of which the defendant was convicted as being in the "moderate" category, but determined that aggravating factors justified an assignment of this particular offense behavior to the "very high" category. This approach, involving only a difference in judgment between the Board and this court as to the seriousness of the defendant's behavior, raises the fewest legal problems. *Cf. Battle v. Norton, supra.* Nonetheless, as the court noted in *Lupo v. Norton, supra*, it is indeed troublesome that the Board gives such little, if indeed any, weight to the court's judgment, as reflected in sentence length, on this particular factor.[10] Because of the time limitations placed upon

8. In *Lupo*, Judge Newman held that due process requires that a parole applicant be informed when the Board is basing its decision upon alleged criminal conduct. In this case, it is arguable that the Board has not adequately satisfied its obligation because of the alternative lines of reasoning which it may have employed in arriving at its offense severity rating. It clearly would be desirable when classifying an offense not listed in the guideline table to inform the parole applicant of the basis for the particular classification decision. In any case, the defendant *does not question the Board's decision on that* ground.

9. Indeed, the issue could not fairly be addressed in this case at this juncture because of the failure of this court to make explicit its own factual determination at the time of sentencing or on Form 792, now superseded by Form AO 235, which provided a space for the court's recommendations, if any, with regard to parole.

10. Judge Newman perceptively observed:
"Indeed, judges may well wonder why the Board's guideline table and its specified reasons for parole denial make no reference to the length of sentence imposed. They may even wonder why parole guidelines specify various *time periods of confinement* correlated with various offense categories, rather than various *fractions of the sentence imposed* correlated with various offender characteristics. Under the latter approach, the Board could still ameliorate unjustified sentence disparities by prudent departure from such guidelines. By not including sentence length as a variable on the guideline table, the Board runs the risk of averaging time spent in prison for particular offenses, without regard to the factors that led sentencing judges to impose terms of different lengths. Without denying the vices of some sentencing disparity, one may question a solution that would rely in part on averaging time actually served. Fortunately, the Board has demonstrated that it has not become ritualistically attached to its guideline table. See Battle v. Norton, *supra*, 365 F.Supp. at 933 (Sigler affidavit). And this Court does not doubt that the Board, in some way, takes sentence lengths into account in making parole decisions. What remains troublesome is that neither the Board's table nor its stated reasons for parole denials tell prisoners what difference the sentence makes." *Lupo v. Norton, supra*, 371 F.Supp. at 163.

a motion under Rule 35, it may well be impossible in most cases for a sentencing court to take any action in response to unexpected decisions by the Parole Board. Here, however, the opportunity for such action is available.

■ While courts have correctly expressed reluctance to function as super-parole boards, *see, e. g., Wiley v. United States Board of Parole, supra,* they should not be reluctant to modify sentences when assumptions which they entertained at the time of sentencing with regard to parole possibilities have subsequently been invalidated. That substantially is the thrust of *United States v. Slutsky,* 514 F.2d 1222 (2d Cir., 1975), in which the court remanded the appellants' cases for resentencing in light of the subsequently learned fact that the 18 U.S.C. § 4208(a)(2) sentences which were originally imposed would not afford the appellants serious parole consideration at an early point in their respective sentences. *See also Grasso v. Norton, supra.* The court held:

"Since in all probability the appellants will not receive the parole treatment envisioned by the sentencing judge, there should be an opportunity for reconsideration in light of all recent developments in the area. An unfortunately mistaken assumption about the effect of a section 4208(a)(2) sentence perhaps does not rise to the level of a sentencing judge's mistaken impression of a defendant's prior criminal record. *See United States v. Malcom,* 432 F.2d 809, 815–16 (2d Cir. 1970). There is no question that the decision of whether actually to release the appellants would remain with the Board of Parole regardless of when their cases were considered. But the parole implications of a sentence are a necessary and important factor for the consideration of the sentencing judge. And when, as here,

there has been a timely motion for reduction of sentence, and the mistake is easily rectified by providing for resentencing, the interests of justice mandate such a procedure." *United States v. Slutsky, supra,* 514 F.2d at 1229.

■ In the instant case, this court assumed that the defendant would be seriously considered for parole release at some point before the expiration of his sentence. With a salient factor score in the "good" range and an offense severity which in this court's view would be "moderate" to "low moderate," such an assumption was reasonable. The court did not anticipate that the Board, for any one of the three above-discussed possible reasons, would classify the defendant's offense behavior as being in the "very high" range. By its action the Board effectively undermined the court's intent and expectations that the defendant serve perhaps 12 to 16 months in prison and the remainder on parole. At this point there is no way in which all elements of that goal can be effectuated. I am precluded under 18 U.S.C. § 3651 (1970) from modifying the sentence to provide for probation following any period of confinement in excess of six months. I can, however, reduce the sentence by six months which will provide for his release, following the deduction of good time credit, after approximately 14 months. Although a sentence of 18 months unfortunately does not allow for a period of parole custody upon the defendant's release, *see* 18 U.S.C. § 4164 (1970), such a sentence does represent the best vehicle for approximating this court's original sentencing goal.

Accordingly, the defendant's sentence is reduced to 18 months under the custody of the Attorney General of the United States, and it is

So ordered.

Given the testimony of Peter Hoffman and the relatively small number of decisions made outside the guideline structure, *see supra,* this court is not as confident as Judge Newman was, over a year ago, that the Board does in fact take sentence length into account in its decisions.